**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: ______________________**

JEFFREY C. SCHNEIDER, not individually, but solely in his capacity as Receiver for TRADE-LLC, BD LLC, TWTT-LLC, CMJ CAPITAL LLC, and CENTER RICHMOND LLC,

Plaintiff,

v.

SILENT STANDBY POWER SUPPLY LLC, FRANKLIN FREEDMAN, and SIRI SALMI,

Defendants.
_______________________________________/

# COMPLAINT

Jeffrey C. Schneider, not individually, but solely in his capacity as the Federal Court-appointed receiver (the "Receiver") for Trade-LLC, BD LLC, TWTT-LLC, CMJ Capital LLC, and Center Richmond LLC (the "Receivership Entities"), hereby sues Defendants Silent Standby Power Supply LLC, Franklin Freedman, and Siri Salmi (collectively, "Defendants"), and alleges:

## Description of the Action

1. This action is brought pursuant to the Order Appointing Receiver dated June 23, 2010, issued by the District Court for the Southern District of Florida (the "Southern District") in *Securities and Exchange Commission v. Trade-LLC, Philip W. Milton, and William H. Center/Relief Defendants BD LLC, TWTT-LLC, and CMJ Capital LLC*, Case No. 10-CV-80737-HURLEY/HOPKINS (the "Fraud Action"), which, among other things, appointed the Receiver to marshal the Receivership Entities' assets for the benefit of all of its defrauded investors. A

copy of the Order Appointing Receiver is attached as Exhibit A.[1]

2. Pursuant to the Order Appointing Receiver, the Receiver seeks to obtain a money judgment for fraudulent transfers, unjust enrichment, and conversion.

**Subject Matter Jurisdiction**

3. Supplemental jurisdiction is proper in the Southern District pursuant to 28 U.S.C. § 1367(a), because: (1) the Receiver sues to accomplish the ends sought in the Fraud Action (*i.e.*, the marshaling of assets of defrauded investors) wherein his appointment was made and such an action is ancillary[2]; (2) the Receiver files this ancillary action in the same district wherein the Receiver was appointed; (3) the Receiver is obligated by the Order Appointing Receiver entered in the Fraud Action to take custody, control, and possession of the Receivership Entities' assets by investigating and instituting actions (if necessary) against individuals or entities with possession of such assets; (4) the Receiver's claims against Defendants seek to recover such assets, pursuant to the Order Appointing Receiver entered in the Fraud Action; and (5) the claims raised in this Complaint are so related to the claims involved in the Fraud Action that they form part of the same case or controversy under Article III of the United States Constitution.

4. Pursuant to the Order Appointing Receiver, the Receiver is obligated to take

---

[1] The Receiver was also appointed over the above entities and another entity called Center Richmond LLC in a concurrently-pending case filed by the Commodity Futures Trading Commission.

[2] If an action is filed by the Receiver in the district in which the Receiver had been appointed, no independent jurisdictional grounds need be shown. *Baker v. Heller*, 571 F. Supp. 419 (S.D. Fla. 1983). "When an action is commenced by a receiver . . . to accomplish the ends sought and directed by the suit in which the appointment was made, such action or suit is regarded as ancillary . . . and . . . jurisdiction of these subordinate actions or suits is to be attributed to the jurisdiction upon which the main suit rested." *Pope v. Louisville, New Albany & Chicago Ry. Co.*, 173 U.S. 573 (1899).

immediate possession of all of the Receivership Entities' property, assets and estate, and all other property of the Receivership Entities of every kind whatsoever and wheresoever located.

5. The Order Appointing Receiver empowers the Receiver to file actions and legal proceedings as the Receiver deems necessary against any individuals or entities with respect to transfers of monies or other proceeds directly or indirectly traceable from funds of the Receivership Entities. Such rights of action, as well as title to all property, real or personal of the Receivership Entities, wherever located within or without this state, are vested by operation of law in the Receiver.

**Venue, Parties, and Personal Jurisdiction**

6. Venue is proper in the Southern District because, as set forth more fully below, (1) Defendants were unjustly enriched, committed the tort of conversion in, and/or were the transferors and/or recipients of fraudulent transfers from the Southern District; (2) the agency relationship and subsequent business venture/Ponzi scheme specifically giving rise to the Receiver's claims was created and continuously operated in and out of the Southern District; (3) the Fraud Action, to which this suit is ancillary, is pending in the Southern District; (4) trying this ancillary action and the Fraud Action before the same Court will avoid redundancy and preserve scarce judicial resources because this Court is already familiar with the general facts of the Fraud Action; and (5) trying this action in the Southern District would not be so gravely difficult and inconvenient that Defendants would, for all practical purposes, be deprived of their day in court.

7. Trade-LLC is a Florida limited liability company which had its principal place of business in Palm Beach Gardens, Florida. Pursuant to the Order Appointing Receiver, Trade-LLC was placed into receivership and the Receiver was appointed to marshal its assets for the



LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

benefit of all of its investors.

8. BD LLC is a Florida limited liability company which had its principal place of business in Palm Beach Gardens, Florida. Pursuant to the Order Appointing Receiver, BD LLC was placed into receivership and the Receiver was appointed to marshal its assets. Without any legitimate basis, BD LLC received proceeds from the securities fraud underlying the Fraud Action and from Trade-LLC investor funds.

9. TWTT-LLC is a Florida limited liability company which had its principal place of business in Palm Beach Gardens, Florida. Pursuant to the Order Appointing Receiver, TWTT-LLC was placed into receivership and the Receiver was appointed to marshal its assets. Without any legitimate basis, TWTT-LLC received proceeds from the securities fraud underlying the Fraud Action and from Trade-LLC investor funds.

10. CMJ Capital LLC is a Florida limited liability company which had its principal place of business in Palm Beach Gardens, Florida. Pursuant to the Order Appointing Receiver, CMJ Capital LLC was placed into receivership and the Receiver was appointed to marshal its assets. Without any legitimate basis, CMJ Capital LLC received proceeds from the securities fraud underlying the Fraud Action and from Trade-LLC investor funds.

11. Center Richmond LLC is a Florida limited liability company which had its principal place of business in Palm Beach County, Florida. Pursuant to the Consent Order of Preliminary Injunction and for Other Equitable Relief against Center Richmond in the CFTC case, Center Richmond LLC was placed into receivership and the Receiver was appointed to marshal its assets. Without any legitimate basis, Center Richmond LLC received proceeds from the securities fraud underlying the Fraud Action and from Trade-LLC investor funds.

12. Defendant Silent Standby Power Supply LLC ("Silent Standby") is a Florida

limited liability company with its principal place of business in Palm Beach County, Florida. Silent Standby received $500,000 from Trade-LLC, comprising monies belonging to Trade-LLC's defrauded investors, without returning any consideration or value to Trade-LLC.

13. Defendant Franklin Freedman ("Freedman") is a resident of Palm Beach County, Florida. He is the managing member and owner of Silent Standby, and transferred and/or received significant amounts of the $500,000 of investor funds for his own benefit, also without returning any consideration or value to Trade-LLC.

14. Defendant Siri Salmi ("Salmi") is a resident of Palm Beach County, Florida. She is married to Freedman, is also an owner of Silent Standby, and also received significant amounts of the $500,000, without returning any consideration or value to Trade-LLC.

15. This Court has personal jurisdiction over Defendants pursuant to § 48.193(1)(a), Fla. R. Civ. P., because they transacted business in and out of Florida, and the Receiver's cause of action arises out of these activities in Florida.

**The Order Appointing Receiver**

16. The Court appointed the Receiver to, among other things, take immediate possession of all of the Receivership Entities' property wherever situated.

17. The Order Appointing Receiver granted the Receiver various powers, including, but not limited to, the specific power to institute such actions and legal proceedings as the Receiver deems necessary in respect of transfers of monies or other proceeds directly or indirectly traceable from investors in Trade-LLC, including actions for recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, et. seq. or otherwise.



LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

18. The claims alleged herein all seek to recover money and property directly or indirectly traceable from investors in Trade-LLC, pursuant to the Order Appointing Receiver in the SEC case and the Consent Orders in the CFTC case. The claims alleged herein are also specifically contemplated by the Order Appointing Receiver and the Consent Orders.

**Overview of Trade-LLC's Fraud**

19. Between May 2007 and July 2009, Philip W. Milton ("Milton") and William H. Center ("Center") misappropriated investor funds by using Trade-LLC to run a classic Ponzi scheme in Palm Beach Gardens, Florida. Milton and Center reported to investors that they could make, and had made, extravagant returns of up to 8% a month or approximately 100% a year.

20. Due to promises of outlandish returns, Milton and Center ultimately raised over $28 million from investors. Milton and Center misrepresented to investors that Trade-LLC was making profits by trading securities and commodities futures when, in reality, there were millions in losses.

21. Milton and Center paid themselves millions in purported salaries and purported expenses. Milton and Center also transferred millions of dollars of investor funds to, among others, their affiliated companies such as BD LLC, TWTT-LLC, CMJ Capital LLC and Center Richmond LLC, which then transferred funds to other insiders and third parties.

**Just as the House of Cards Began to Collapse, Milton and Center Divert $500,000 from Trade-LLC to Silent Standby/Freedman**

22. On or about June 23, 2009, the SEC contacted Trade-LLC's counsel regarding securities law violations. Soon thereafter, Milton and Center agreed to shut-down Trade-LLC's operations and agreed with the SEC to escrow and freeze all funds derived from those who had been defrauded by Trade-LLC.

23. However, on June 23, 2009 – the very day that the SEC contacted Trade-LLC – Milton and Center diverted $500,000 from Trade-LLC to Silent Standby.

24. At the time of the transfer, Milton and Freedman were good friends.[3] The $500,000 transfer was memorialized in a Promissory Note, but there was no interest on the Promissory Note and Silent Standby had the ability to re-pay the $500,000 at no interest by September 15, 2009, absent which no penalties would be imposed, except 15% of Silent Standby would be transferred to a company designated by Milton and/or Center.

25. Not surprisingly, Silent Standby never repaid Trade-LLC (or another designee) any of the $500,000. Even worse, the 15% interest in Silent Standby was not actually transferred to Trade-LLC; instead, an "assignment" was executed between Silent Standby and CMJ Capital LLC, in which the right to receive the 15% was assigned to CMJ Capital LLC. This is, quite simply, even further evidence of fraud, because CMJ Capital LLC was a related entity that was also controlled and owned by Milton and Center. CMJ Capital LLC, in fact, also had improperly received funds from Trade-LLC as things came crashing down – CMJ Capital LLC received over $4 million of investor funds from Trade-LLC, including the $1.8 million "parked" and fraudulently transferred to T & D Highway Services LLC in July 2009. As of this juncture, the Receiver has seen no evidence that the 15% interest in Silent Standby was actually transferred to CMJ Capital LLC, either.

26. At or around the time of the assignment of the right to receive the 15% interest in Silent Standby to CMJ Capital LLC, Freedman knew or should have known that Trade-LLC, Milton, and Center were parties in a state court lawsuit which involved (1) approximately $6.5

[3] As the Court may recall, Freedman and Milton are no longer friends, because Freedman testified against Milton at the evidentiary hearing on the civil contempt issue.



LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

million of investor funds held in escrow for the benefit of investors in Trade-LLC; and (2) claims by investors, as parties to the case, that Trade-LLC, Milton and Center had defrauded them. In fact, that pending lawsuit against Trade-LLC was one of the reasons why CMJ Capital LLC (and not Trade-LLC) was designated to be the recipient of the $500,000 that Silent Standby was supposed to return. Defendants agreed to this, which raises yet another red flag.

**Freedman and Salmi Transfer Significant Sums to Themselves**

27. After receiving $500,000 of investor funds from Trade-LLC, Freedman and Salmi transferred to themselves thousands of dollars daily, weekly and monthly, as well as making purchases from the funds for their benefit. The transfers to Freedman and Salmi significantly depleted the $500,000 of investor funds.

28. Given the foregoing, it is inequitable for Defendants to reap the benefit of $500,000 derived from Trade-LLC's defrauded investors for their own benefit, without having provided any consideration or value of any kind to Trade-LLC.

**Count I**
**Fraudulent Transfer**

29. The Receiver realleges and reincorporates paragraphs 1 through 28 above as if fully set forth herein.

30. This is a claim to avoid and recover fraudulent transfers pursuant to § 726.105(1)(a) and § 726.105(1)(b), Florida Statutes, against Defendants.

31. Milton and Center transferred at least $500,000 from Trade-LLC to Silent Standby, which, in turn, transferred significant sums to its principals – Freedman and Salmi.

32. At the time of the transfers, Trade-LLC was operating as a classic Ponzi scheme and thus had the actual intent to delay, hinder, or defraud creditors and made the transfers to



LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

delay, hinder, or defraud creditors. In addition, because Trade-LLC was operating as a Ponzi scheme, it was de facto insolvent.

33. Defendants did not pay reasonably equivalent value in exchange for Trade-LLC's transfer of at least $500,000, which Defendants used for their own benefit. In fact, Defendants gave Trade-LLC nothing in exchange for use of the $500,000, all of which comprised monies belonging to Trade-LLC's defrauded investors.

34. As a direct and proximate result of Trade-LLC's transfers to Defendants, the Trade-LLC receivership estate has been diminished. The remaining assets of Trade-LLC are insufficient to pay Trade-LLC's liabilities.

35. Accordingly, the transfer of at least $500,000 to Silent Standby and the transfers of significant sums of those funds to Freedman and Salmi are avoidable pursuant to Chapter 726, Florida Statutes.

**Count II**
**Conversion**

36. The Receiver realleges and reincorporates paragraphs 1 through 28 above as if fully set forth herein.

37. This is a claim for conversion against Defendants.

38. Trade-LLC's investors collectively own the $500,000 that Milton, Center, Trade-LLC diverted to Defendants.

39. Defendants wrongfully exercised dominion and control over at least $500,000, to the detriment of, and inconsistent with, Trade-LLC investors' ownership rights thereto, when Defendants used the funds for their own benefit.

40. Defendants were not authorized by Trade-LLC investors to assert any control

over, manage, or dispose of at least $500,000 and, notwithstanding, Defendants have wrongfully and permanently deprived Trade-LLC investors of their property.

**Count III**
**Unjust Enrichment**

41. The Receiver realleges and reincorporates paragraphs 1 through 28 above as if fully set forth herein.

42. This is an equitable claim of unjust enrichment against Defendants.

43. Trade-LLC conferred a substantial benefit on Defendants, namely Milton and Center transferred at least $500,000, consisting of Trade-LLC investor funds, from Trade-LLC to Silent Standby, which, in turn, transferred significant sums of those funds to Freedman and Salmi.

44. Defendants knew or should have known that Milton and Center wrongfully and unjustifiably transferred at least $500,000 of investor funds for Defendants' use.

45. Notwithstanding, Defendants voluntarily accepted and retained the funds transferred to them.

46. In receiving and utilizing the funds, Defendants have unjustly retained a benefit to the detriment of the Trade-LLC receivership estate.

47. It is inherently unfair and inequitable that Defendants be able to retain the benefit of receiving $500,000 of defrauded Trade-LLC investor funds for their own use, without paying value to the defrauded Trade-LLC investors for use of their $500,000. Accordingly, equity dictates that Defendants return to the Trade-LLC receivership estate at least the $500,000 they transferred and/or received.

48. In addition, as a direct and proximate result of Defendants' retention and use of

the $500,000, the Trade-LLC receivership estate has been diminished.

**WHEREFORE**, Jeffrey C. Schneider, not individually, but solely in his capacity as Receiver for Trade-LLC, BD LLC, TWTT-LLC, CMJ Capital LLC, and Center Richmond LLC, demands judgment as follows:

A. Setting aside the transfers by and/or to Defendants, directly or indirectly;

B. Entering a money judgment against Defendants for at least $500,000, together with interest thereon from the date of the transfers; and

C. Providing such other and further relief as the Court deems just and appropriate.

Dated: August 29, 2011.

Respectfully submitted,

**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
*Counsel for the Receiver*
201 South Biscayne Boulevard
34th Floor, Miami Center
Miami, Florida 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789

By: s:/Patrick J. Rengstl
Patrick J. Rengstl, Esq.
FL Bar No. 0581631

ED0493